case. Will the attorneys please step up to the podium, tell the court who you represent, your name, and approximately how long your argument will take. Good morning, counsel. Good morning. Andrew Finko for the candidates at police across the balance. Kenneth Williams, Judith Gibbs, and Annette O'Neill. The argument will probably take 20 to 30 minutes. Oh, you have 20, counsel. Thank you. Good morning, justices. Christopher Agrola on behalf of the appellant, Bernadette Lawrence. I believe my argument will be 15 minutes or less. Okay. Very good. All right, Mr. Agrola, you're the appellant. Why don't you proceed with your argument. I'm sure you've read it, but just a little background. This is an appeal on an election case that comes from Cook County's hearing for Judge Kirby. It is three cases, actually, and the three cases are nominally considered 2013 TEOB 18, 19, and 20. The candidates are for the High School District 205 of Thornton Township. They are Ms. Judith Gibbs in 18, Ms. Annette O'Dowd-O'Neill in 19, and Mr. Kenneth Williams in 20. The objector brought a petition before the electoral board, which was composed completely of public members appointed by the circuit court by circuit court order, and essentially, in all three objections, it was a very straight, factual argument that the nominating papers pursuant 10.4, 10-4 of the election code were not bound. Therefore, they were invalid, and the candidate's name should not go on the bill. The hearing was held, well, there was a scheduling hearing on January 13th of 2013, evidentiary hearing on January 28th. At that evidentiary hearing, there was three witnesses. Now, before I get into the actual hearing, the electoral board's opinion was brought before the circuit court, and the circuit court reversed. And did you file an appearance in the circuit court? On behalf of Ms. Lawrence, no, sir. Okay. And so no argument was made by you before the circuit court? In front, well, actually, there was a waiver. There was an appearance made on behalf of Ms. Lawrence by the electoral board attorney on her behalf. He had stepped up in front of the circuit court. Judge Ponce de Leon had it before he recused himself and it got transferred to Judge Kirby. And the attorney stepped up, said, I'm waiving, I represent Ms. Lawrence. I'm waiving argument. I'm not filing an answer or anything else. And Judge Ponce de Leon acknowledged this and said he didn't have to, and the gentleman left. Now, yes, go ahead. I was just going to say, counsel filed some supplemental record that I haven't even seen yet. Okay, but before I get to that, anything that Judge Ponce de Leon did has been vacated. So the question is, I'm asking the question again. The question is, did Ms. Lawrence, our attorney, appear before the circuit court? Yes, and that's what I was going to get to. The record that was filed, unfortunately, didn't include the transcript from in front of Judge Ponce de Leon. Mr. Taylor, thank you, counsel. Mr. Taylor appeared in front of Judge Ponce de Leon, not knowing, of course, he would later recuse himself. He said, hi, I'm here. I haven't filed an appearance. Counsel for the candidate says, I want a default. And Judge Ponce de Leon said, there's no default. There's no requirement for an answer. I don't see what an appearance is required. They got notice under the election code. They got notice of the, objector got notice of your appeal to the circuit court. That's all that's required under the election code. There's nothing that indicates you need to file an appearance or an answer. I have the transcript, which I do not believe was filed by the appellee cross appellant of Judge Ponce de Leon. The reason I bring all that up, and I'm getting there, the reason I bring all that up is, having given that ruling, in his opinion, that they don't have to file an appearance or answer, Mr. Taylor leaves. Ultimately, the matter gets transferred back in front of, or out of Judge Ponce de Leon over to Judge Kirby, unbeknownst to Mr. Taylor. And now, without notice to Mr. Taylor, a renewed effort to default the candidates, or the objectors made, and Judge Kirby indicates, well, technically I suppose they're in default. But I would argue, and I submit. But does she find them in default? No. She didn't enter a default judgment. She did not. But did she, but they, she saw that they were, I mean, it's in her order. Yes. She says the default, they defaulted, but I'm not entering an order, a judgment. That's a difference. Isn't there a difference? Big difference. Big difference. Okay. And the big difference, and also that's what I'm trying to, that's why I segued into Judge Ponce de Leon, all the Kirby, Judge Kirby matters had happened without Mr. Taylor's knowledge, because he felt secure in having said, we're here, we're waiving argument. He appeared, well, let's, you know, I should back up. He appeared in front of the circuit court. He didn't file a paper, but he stood and he said, I represent Ms. Lawrence. But he didn't file an appearance. He didn't file a written appearance. Well, you have to file a written appearance on the roof. Well, yes, I believe that if you appear generally, you, by saying, I represent somebody and I waive argument. Let's go to a different question. Okay. I recognize. We can, okay, that's a problem, but let's go to a different situation. Your appeal is on the paper. Basically, is it bound under the rule? On the clip, no, our appeal, yes, our appeal is of the evidentiary hearing that was held at the electoral board, which is what I was getting to. Right. Everything at the circuit court, other than perhaps this issue of appearing, put aside now. Right. And so here's my question. Yeah. The issue you raise on appeal, what did Judge Kirby say about that? That she was troubled. Well, no, on the issue you raise on appeal regarding the paper clip, that they weren't bound, did you hear any evidence on it? Yes or no? She had the record. Did she hear any evidence? Did anybody bring up the issue before? Is there anything in the record that says that she heard something, somebody say something, anything? Kirby, say something. No. Okay. So there is nothing before, and I appreciate your kin here. So there's nothing in the trial court with regard to this issue. Why should we then? Besides, you know, the other argument we were talking about, whether the appearance and everything else, put that to a side. I'm not even going to reach that right now. Put that aside. How do we have the ability, how do we have jurisdiction then to have you appear before us when you kind of like leapfrogged? You leaped over the trial court, and you're in before us, and no trial judge has ever heard your argument, has ever ruled on the argument, doesn't know about the argument. It wasn't presented. I mean, you know, before them. It wasn't before that judge. I don't. Give me the basis for our jurisdiction. Certainly. The focus of judicial review of an electoral board decision is limited in scope. There's no requirement for an answer by a candidate or an objector who's on judicial review that forget the appearance for a moment. The trial court, Judge Kirby did have the record. When we say no evidence, I want to be clear. She certainly had evidence. She had a trial record. Did she have the trial record? Yes, sir. I thought the evidence is that the whole record wasn't provided in time. So we don't, I don't know whether she, I mean. Okay, like this, and particularly on this issue. No, no, she had the trial record, and by that, I mean, and I do want to address this fully and clearly. She had all the transcripts of the three cases for the three evidentiary hearings that were held on January 28th. The argument, which became confusing, and I recognize that. That's why, you know, Mr. Bass is here, and they're willing to discuss that with your honor. But they brought the record, and it was filed a day late because they tried to get it into her chambers on the day she requested. It was a one o'clock statement by, I believe, Mr. Bass, who said on the record, I'll get it by four o'clock. Unfortunately, in an effort to be over-inclusive, you now have seven or eight volumes in your appellate court of everything of the 25 cases that were heard by the Thornton Electoral Board. The three cases in that group were three transcripts. The exhibit was exhibit number one of candidate, which was a copy of the candidate's exhibit with a clip demonstration. And exhibit number two was an affidavit, which formed a supplemental record on top of it. She had them. But I don't know if she was sure. That's not the question whether she had them. The question is, did somebody raise the issue? Because lots of things that a trial judge might have before, and you just said it was huge. And she didn't say she read everything. Why would she even go through that? Because she's concerned about the issues that are being presented to her. And that issue was brought by the other side to get a reversal. Okay. So with regard to the issue you bring before us, though. Yes. That was never presented to her. And you said, you already conceded that. So how do we have jurisdiction to consider your brief? I didn't concede that she had no evidence. There was no evidence you're hearing additionally. There was some evidence. There was argument by counsel who, if you're not required to file an answer, respectfully, if you're not required, my understanding is if you're not required to file an answer, you can still appeal. Now, on the basis that you expect the record to support a direct, especially in one like this, expect the record to support a direct affirmance of the electoral board. You don't expect, why would you expect that? That's not getting true today. See, here's my point is, you have that, you don't have to appear. I mean, you know, but if that argument is not raised, hasn't been waived, because somebody needs to bring it before the, you know, again, I'm not even talking about all the other things I talked about first. But doesn't, I mean, our whole system is based upon the fact that we do not have original jurisdiction. Now, you would concede that. So, you're asking us to make a determination when the trial court, there's nothing the trial court did in the hearing before the trial court, in the opinion of the trial court, in the orders of the trial court, in the transcripts before the trial court. There's nothing before the trial court saying the issue was applicable. Yes, except the statement by, and again, it was in front of Judge Ponce de Leon, which your honors do not have. He says, I will rest on the record. I waive argument, I rest on the record, i.e., the record supports affirmance. The standard is whether or not it was against the manifest way to the evidence. He doesn't have to argue that to anybody who has to hear these. But it was vacated. So, how can we, you tell me how, a vacated order, he definitely vacated, Judge Ponce de Leon may, you know, go back to him. But, you know, when that happens, somebody maybe should have said something. But that would be pretty rare, if not unheard of, that when a judge vacates an order, all of a sudden it becomes unvacated, you're saying, because you're using it before us. You can't have it both ways. You know, we can't pick and choose what he vacated and what he didn't, and that's what you're asking. No, I'm not. Respectfully, he vacated his orders. He doesn't change the fact that a gentleman appeared on behalf of Ms. Lawrence in a court of competent jurisdiction and said, Judge, I'm here today. I don't have to file an answer or appearance. Are we all in agreement? The judge says, yes. He says, I'm waiving argument. I will rest on the record, i.e., the record supports affirmance of the trial court. So, is that really not making an argument? I shouldn't say he didn't make an argument. He said, it's right there. Okay, let's take that. Okay, so let me just finish that. So, now, he's gone. Judge Ponce de Leon vacates everything he does, transfers it to Judge Kirby, and then it proceeds in front of Judge Kirby. It doesn't change the appearance of a gentleman. He certainly has appeared. Okay. If he, let's say, before Judge Kirby, let's even say it was before Judge Ponce de Leon. Sure. For my question, it doesn't matter, because the issue you raised before us was not briefed, and it was not argued. He was standing on, but so there's no, there's nothing that any judge reviewed that, that any judge made a determination on that issue. There's nothing that, I mean, if you're going to appeal, I mean, if you're going, if there's an appeal, hasn't there then, if the judge doesn't hear anything about it, doesn't consider it, nobody considered this. Yet, you're asking us to consider this issue, really, for the first time. No, I disagree. The judge did consider it. She entered an order. The question in front of her, well, Well, she did not, at the, at the paper clip. No, she entered an order finding that the electoral board's opinion, striking all three candidates, was against the manifest way to the evidence. That's the standard. It is such a simple standard. That's why an answer isn't required to preserve your appeal rights. You are simply bringing it in front of the appellate court, the circuit court, as a reviewing court, saying, in this case, the candidate electoral board erred against the manifest way to the evidence. Mr. Taylor appears and says, we may have argued, we'll rest on it, rest on the, you know. Subsilenzio, he's saying, it's not against the, you know, all he's got to say is one more, are we fighting this because there's one, five more words? Judge Ponsalian, the decision was not against the manifest way to the evidence. Thank you. Those are the five words I guess you're, you're, you're, you're under, is indicating you're missing. But it's really not when he says, I rest on the record. Subsilenzio means, it is not against the manifest way to the evidence. But as I understand it, I just want to make sure. Yeah. You say that, that part of the record's not before us. Well, if appellee's requirement to, to, to at least supplement, because that's his argument, is that nobody. But right now, it's not before us. Yes, but we're arguing a motion to strike. And if he's going to bring a motion to strike, he has to bring a full record in support of that. He, it's his responsibility under Supreme Court rules. I haven't, I'm willing, I, I moved to try to put this back in. But it is literally found at pages 21 of the transcript, and 25 of the transcript, where it's unequivocal. Judge Ponce de Leon says, you don't have to appear. And on page 25, he says, thank you. We waive our argument. We'll rest on the record. Was that put in an order? Waiving our, no, I do not believe so. No, sir. It's on the record, though. So, I mean, it, it was rather hasty, acknowledged. But it isn't like nobody showed up, and it's completely in, in, you know, it's smoke and mirrors. And we show up today and say, well, we're here, finally. Somebody showed up and said, we rest on the record. It's, it's such a simple record, which is kind of what I prepared for today. That it says, with three witnesses, it's not against the manifest way of the evidence. That's perhaps why Mr. Taylor, and I cannot know his mind, was a little cavalier. He's like, I got two people testifying here that wasn't bound. Simply wasn't bound. It's a simple question of fact. Were. Yes. Were you a party to the circuit court proceeding? No, sir. Do, does a non-party have a right to an appeal under 303? Ms. Lawrence was a party. Well, that's what I mean. Well, Ms. Lawrence was, absolutely. Yes, she was never seen pursuant to statute. I, I take your question very literally. No, no, no, no, no, no, I'm not talking. I wasn't an electoral voter. No, I know that. Till Deere, never mind. I'm sorry, I took your question too literally. Yes, Ms. Lawrence was, absolutely, sir. Justice Hyman, she, she appeared in front of Judge Ponce de Leon. Now, him voiding his orders doesn't mean all those appearances don't happen. I mean, that's as if saying that she'd file a written appearance. He voided his judgeship over, transferred it to Judge Kirby. I've got to file a new appearance, of course not. He appeared verbally, he waived arguments that I rest on the record. Meaning, the record supports this, you know. What, what happened about the open meeting violation? There isn't one, there isn't one, there simply isn't. I mean, you've got the transcripts of all three cases and they, they deliberated on the record. They voted on the record. It was a unanimous vote on the record. Did they sign together? They signed subsequent at, before the January, the February 1st meeting. And by the way. But that, but, but they together, isn't it, the, the act says it has to be in writing. It is in writing. Right. And it has to be voted. They get, they have to have a meeting to vote that writing, that piece of paper. They have it. That, no, the act says. There's just one person there, right? They have, no, they, they have to have a meeting to decide in open meetings. And again, remember, Open Meeting Act is more of a judicial, legislative issue than a judicial. But even the judicial, and under this electoral board, they have to, under their own rules, deliberate in public and vote in public, and they did. Now, the, the ministerial act of writing this, they, they weren't, I mean, nobody expects them to sit there in front of everybody and type. No. We all recognize that. But, but we're supposed to get a writing, and then they vote on their writing. Like, you know, we may all agree on an opinion, but we still have to sign that opinion. And they did. But in, in this case, they have to sign it, an open meeting, to sign it, to approve that writing. They have to approve the writing. And that has to be done in an open meeting. I don't see that as being required. They have to approve the vote. The vote is reflected in their order. And they, by the way, they did not enter a new meeting. They just adjourned briefly into executive session and reconvened on February 1st. And I do have the fact that these local electoral boards are actually exempt under the Open Meetings Act from the quasi-adjudicative body definition. And I note that is in Powell versus East St. Louis Electoral Board, 337 LAF 3334, the 5th Circuit case, 5th District case 2003. And I'm kind of doing this on the fly. I don't normally do this like this, but short time frame and the fact that things are filed literally about 24 hours ago. This board deliberated in public, voted in public, drafted an order reflective of their vote, and it was issued in public. They reconvened, reopened the meeting on February 1st, and issued the order in public. And how many people are present? One person. And in fact- Is that appropriate? Yes. I see nothing to say it isn't, because it is merely issuance to make sure that the clock runs, they are issued informally. In fact, counsel for the candidate wasn't even there. The candidate was there, but the counsel wasn't. It was merely a ministerial moment where they handed over the order. It was not a point where public discussion or any of the things that are Open Meeting Act appropriate were required. Okay, that's what I want to get at. Section 10-10, if you want to look at it. But that says that the decision of a majority of the Electoral Board shall be a final subject to judicial reviews provided in 10-10.1. The Electoral Board must state its findings in writing and must state in writing which objections, if any, it has sustained. A copy of the decision shall be served upon the parties to the proceedings in open proceedings before the Electoral Board. So what, doesn't that mean that there has to be an open meeting with the board present to approve the writing? Not just the oral, but the statute itself talks about a writing. And I don't have the statute directly in front of me. If you read those last ten words, but the last ten words say, or five words, eight words, say must be tendered. It doesn't say they all have to be present. The open meeting, you don't need, you need a certain quorum to open an Electoral Board meeting. You do not need everybody present to actually reconvene from a recess during an executive session and just hand over an order. They're handing over an order. A member was there. It was signed. The member said in open court and open proceedings. We're back on the record in 18-19-20. We have signed the order. Here's the order. In full compliance, I think you'd agree. But here's the difference. Yes. You're equating the oral approval by the three, okay, with the presence of one at the writing. That, you say that's equal, right? They approved it. You said they approved. They, all three were present. Voted on it. And they voted on it. And they approved with no writing. And then there was a writing, and there was one person present that says, this is good. The other two had already signed it. That's fine, but they weren't there. Correct. Okay. So in the 10-10 states, it has to be in writing. Yes. So if they're not present, then that's the violation of the Open Meetings Act. The Open Meeting requires that it be approved in writing. No, the Open Meeting Act requires a decision in writing approved and, if you read that last second, issued in an open meeting. It was issued. They did everything. These small electoral boards, they have these reconvening of something that wasn't an adjournment. They merely went into executive session. Somebody came back out and said, here, we've signed it. Granted, a week later. We've signed it. Here you go. Open meeting. Nothing below board. Everything is on the record. And like I say, it wasn't even raised at that time. The objector, the candidate's attorney wasn't even present. So, again, now we're getting into a whole waiver argument. They didn't object through counsel at the meeting that this is improper. It only comes later. They have to preserve things to raise them. I mean, this was something that was not preserved. They did not find it to be such a critical event that counsel even appeared on February 1st. They held an open meeting, voted an open meeting, deliberated an open meeting, unanimous decision in an open meeting, drafted an executive session, signed an executive session. A member, not reopened, I've got to use the right words, reconvened the meeting that had been adjourned for executive session, handed it to all the parties. I want to go back to your other issue for me. Let's assume everything you said. That waived the argument and preserved the issue with regard to the paper clip and so forth. Okay. Put to the side the pictures of the paper clip. Some things came in later. Let's put that issue to the side right now. Judge makes a ruling. I'm resting on my papers. On the right. Okay. Judge rules. You're first. Now, and the totality of the circumstances. So how are we, what are we to do now? How do we, your issue is this one little issue in a much bigger package. How, are we supposed to have a hearing de novo? No. No, I can't do that. So I'm trying to figure out. The standard was set forth in my, yes, I take your meaning. The standard is set forth. The appeal to you essentially moves away from the trial court. You are now reviewing the electoral board decision for an abuse of discretion standard. With regard to this one dispute. These three hearings, January 28th was the evidentiary date. Two witnesses that were impartial, local election officials. One candidate testifying. Found to be credible by the board. And by the way, there's some issues about bias and all this. Well, the non-bias thing, we've got three public members completely unrelated to this board and whatever tribulations and trials are going on in there. So you've got three independent witnesses, three independent board members looking at three witnesses and two of them testify, they're unbound. Simple as that. Very much in detail. Page after page of testimony. The testimony is that much. They adopt from 18 into 19 and from 18 and 19 into 20. It's the same testimony. Very clear. The local election official and her assistant. He shows up, hands them each over. They are unbound. We stamped them a certain way. Very clear. Of course, Mr. Williams controverts it. Interestingly enough, when he controverts it, he then controverts himself. He says he had them with Ms. Gibbs. She handed them to her. He had them with her just a few minutes before he puts the clips on. Yet later on, only in the third case, his case, he brings a photo that one of the members, Mr. Bush, says, you're contradicting yourself. He said you just put it on a few minutes before, but now you tell us you've got photos showing all these clipped up. Actually, it's a black binder clip, not a paper clip. But he says, and yet you can't tell me even when you took that photo. I guess my question is a little broader. You win. Let's say you win an appeal. You still lose. Because she already decided you violated the Open Meeting Act. She has retaliated circumstances. She reversed. So if you win on this issue, you still lost on the other issues because they're not here on appeal. So I don't see, I don't understand where we're going with this. The appeal is not an appeal of the trial court acting as a court of review. Having appealed, we appealed strictly what was in front of the electoral board. I know, but there is, we can't ignore what Judge Ward-Kirby did. So you still lose because the issues she addressed, those issues are not being appealed. So she said A, B, C. I'm reversed. You're saying D. We rule, let's say, hypothetical, we rule in your favor on D. You still lost on A, B, C, which goes to the whole thing. Just because you win on D, you still have these candidates back on the ballot. No. Respectfully. Tell me why. My understanding, just my understanding is the limited jurisdiction of, I mean she can put findings and dicta in her order, but her jurisdiction is limited. She is only permitted under the election code to review the findings of the electoral board against, in this case just fact, we all agree that, against the manifest weight of the evidence. I mean, if it was a law question, it would then be, of course, de novo. But this was just a fact. This is the box she's working out of. But she did. I understand that. She considered other things. But this tribunal, as that tribunal, is required to focus strictly on the electoral board's decision. The fact that she ruled on other ancillary things is irrelevant. I don't have to know that it is, and respectfully, because they have nothing to do with an appeal of an electoral board decision. But yes, they do. They're outside the jurisdiction. No, but if we reverse, her order still stands. You still lose. No, her order is having appealed, their judicial review is under the election code. They reverse, if you reverse, it's under the election code. All her other findings are not properly binding at all because she didn't have the jurisdiction. That's why yours is a fresh look. But you didn't raise that argument. I don't have to raise it because you're right, I don't want to be one of those people who doesn't answer the direct question. Yes. Yes, I did. You got it trickier. Yes. So a direct answer, no, we didn't, because you get the fresh look. Having appealed the circuit court's decision, their decision is literally wiped off the books. It is a fresh look. And that's what this is. But couldn't we rule that she was right on A, B, and C, D being your issue? No, because you don't rule on her decision. And I cited the case, I'll pull it again, but I hate citing cases to an appellate court. It's in there. You're not ruling on hers. Her decision is completely, I hate saying that about a judge, it's irrelevant. Her decision is now, because we've appealed to you, irrelevant. How could it be irrelevant? Because that's her decision. She may, if you waived it, you wanted her to do something, I mean, that's why you waived, you expected her to do something. So it's irrelevant. They expected her to do something. Well, you did too. Well, yes. Yes. I'm accepting what you said. Yes. So you were there, right? Even though you don't say anything, you were there. Yes. In that order, you are still. What order are you appealing from? You appeal from her order. Your argument would be more like, if this case went to the Supreme Court, well, we have to say that she doesn't. Well, no. It's just, I didn't, you know, I'm not in the legislature, and all I can say is that I'm not saying it's a wrong position, but it's quite wrong. It says, you know, in Harmon v. Thomas Cicero Municipal Officers, and I did what I said I wasn't going to do, I'm going to read it. But just Berman v. Vicara, an appellate court is required to review the electoral board's decision rather than the trial court's decision. It's not, you're not here to either affirm or deny what the trial court did. Having appealed to you, that removes it from the decision of the trial court, and you have to decide independently whether or not. Now, these other issues are simply outside the scope of a judicial review of the electoral board. But not if he brought a counter, so that now they're before us. Well, they're before you, but we haven't even gotten to that. One, they didn't ask for an expedited schedule. Their brief filed yesterday, two days ago, I got last night at 645, raises issues that are also not before you. One, they're collateral. Two, they're non-responsive, outside the scope. I mean, some of this stuff is relating to a chancery case that's still ongoing down the street. And they tried in front of the circuit court, which we're not talking about, they tried to supplement the record with timesheets of one of the counsels. They tried to, at this level, they've added other things, and they bring up issues for the first time on appeal. We're just strictly, I mean, I'm trying to keep it in this little box. And the fact that somebody wants to file a broader petition for judicial review, they can file something saying that I'm also trespassing on their property. It's still not part of that case. And unfortunately, if the trial judge does rule it, perhaps I've encroached on their real estate. I can't help that, but that's still not part of the case in having appeal to you. You start over fresh. You're only here to rule on whether or not the electoral board abuses discretion. Now, all these Open Meeting Act things and this bias argument and this illegal improper contact between the board member and the local election official, which I don't, some of this I don't even understand, but it's ancillary. It was ancillary at the, I think it actually clouded Judge Kirby's view of the case a little bit. Threw everything at the wall. Instead of saying, we have this decision, here are the transcripts, it looks like about an hour-long hearing in all these cases, each, against abuse of discretion, not an abuse of discretion. That's all. And instead, he's bringing in Open Meeting Act arguments, which if he has them, he brings a separate action, maybe for injunctive relief in chancery. He doesn't bring them in the judicial review section. You don't, this is a limited jurisdictional case where it's only one question, well, law of fact, law of fact. One question whether the electoral board abused its discretion, period. Now if he wants to bring all these other things, it's improper. And it looks like it clouded, on some level, Judge Kirby's view of the case. She started going through this Open Meeting Act stuff and this other stuff, which was never raised at the electoral board level. Well, it's not part of a... It didn't happen yet. Well, he's got to appear. If he wants to talk about appearing, he should have appeared on February 1st and said, hey, this isn't kosher. He's supposed to know that? Well, he's supposed to appear. He's supposed to preserve error at the electoral board because that's the only thing the jurisdiction is for review. And if he's got something, he says it wasn't properly constituted, it wasn't this, he's got to be there to at least raise it. I think that's what the Open Meeting Act says, that you have to be at the open meeting at which the Open Meeting Act violation occurred. Anything? No. Anything? No. Why don't you summarize your argument? Okay. Just in brief. This is an appeal on a limited basis of a very limited issue, an electoral board's consideration of evidence. These ancillary issues raised by the Appellee Cross Appellant, I brought up the first time almost every single one of these on the Appeal for Judicial Review and then again before this Court, which I got 24 hours ago or less. The fact of the matter is this is a very simple, almost a vanilla electoral board issue. Two witnesses testified that were very credible. The electoral board, composed entirely of public members, found them to be credible, found that the papers were not properly bound pursuant to 10-4 of the Election Code and therefore all of them were invalid. This is a limited jurisdictional case where all these ancillary issues are not properly before this board. I would ask this Court to affirm the electoral board's decision on all three of these cases, 13, EB, 18, 19, and 20, and find that these candidates do not appear on the ballot. Thank you. Thank you. Mr. Finkel? Good morning. Good morning. May it please the Court, Andrew Finkel for the candidates. This matter raises a number of prefatory issues before we can, I've raised a number of prefatory issues before we get to the merits of the electoral board decision, which is far down the road. I did file a motion to dismiss the appeal, which is the simple issue of not filing an appearance before the trial court, not preserving the issue at that trial court. That issue... They didn't file an appearance before the trial court, they didn't, they're not a party. They were a party, but they were served, so they received notice. And as counsel mentioned, there was a lawyer that did appear, although he never filed an appearance. I think that's... You only have to file an appearance to be a party to something? If you want to participate in the proceedings, the rules say you should file an appearance. Or else it's defaulted. Right. And the judge did rule in this situation that the objectors, both of them, were defaulted. Now, although we're only dealing with Bernadette Lawrence here, they were in technical default specifically because they did not file appearances or participate in the proceedings, which goes to the point of, well, you know, we can't really even get to anything else unless we have an issue that was preserved for appeal by the appellant. In this situation, they didn't do that. Could they say that, yeah, they did, because before Judge Ponce de Leon, they said, we're waiving a right to go in further, but we're relying on what was done before the electoral board. If they're waiving argument, then they should have, first of all, filed an appearance, but that also strengthens our position because then they have no argument to present to this court. If they had an argument, then they should have asserted it before the trial court, whose job is to review the electoral board's proceeding, do the hard work of going through the transcripts, going through the evidence, making sure that there is a sufficient basis on the record to support the electoral board's decision. So in this situation, this trial court judge was not even able to do that. She wasn't able to get to the merits because there was no record on appeal. And this trial court entered as a sanction, and the word sanction, she used that on page 8, page 83. She said that she would enter an appropriate sanction. Now, sanctions are reviewed for an abuse of discretion standard. So that's a fundamental question is, OK, well, is this a sanction or is this another type of order? I believe in this situation, because she never got to the merits of the electoral board decision, this is appropriately more of a procedural ruling because of the failure of the electoral board on two occasions to file the record of proceedings. I mean, it's fundamental. An electoral board does not need to be compelled to file its record of proceedings. The election code says the electoral board shall file that record. I asked counsel, and I said, when are you guys filing this record? I didn't get an answer. I filed a motion to compel. Judge Ponce de Leon entered the order on February 19th. So although his orders were vacated, on February 19th, that order was in full force in effect. On that date, they should have filed their record of proceedings. The record was filed on the 20th. So although the order was vacated, it was in force and in effect at the relevant time. Judge Kirby noticed then that on my rule to show cause to say, well, we still don't have a record. Please file the record. Mr. Bass said, no problem. We'll have it to you by 4 p.m. They never were able to do that. So we don't get to the merits of this case simply because of a due process issue of not having a record before the court that is full, complete, and accurate. But going back to the initial argument of that there was no standing to pursue this appeal because the appellant did not preserve any issue for appeal. That's set forth in the Sinkes decision. It's set forth in the Keating decision as well, which, one second. Keating is 155, Illap III, 774. It's from 1987. It very clearly says, Respondent subsequently failed to preserve the issue. No testimony or evidence on the point was taken at trial, and Respondent did not ask the court to resolve it. But those aren't cases with administrative hearing. Keating was from an electoral board's order. Yeah, it was an electoral board review. It was. Yeah. And that one said that a question never considered by the trial court may not be raised for the first time on appeal, and it cites the Kravis, which is Illinois Supreme Court. Sinkes similarly discusses that, and that was in 2008. It also says that an argument or issue not presented at the administrative hearing is barred, and then it goes on to talk about the trial court proceeding and how it should have been raised at the trial court, because that's the job of the trial court. And it would open the floodgates if all of a sudden, well, there's a loophole now that says, okay, parties don't need to really participate in the trial but can later on, if they lose, come back to the appellate court. That was my example. Right. A, B, C was before Judge Kirby. D, the issue of the paperclips, she never heard that. Right. And we're here on the paperclip. Right. Right. And that's the big, that's the ultimate issue, but we can't even get to that. The other argument that I did assert was the Latches argument, which was ruled upon in electoral board matters, that does say, well, where a party sits on their rights, they are then prevented from further pursuing that argument or that issue at a later date. And it specifically says, in an electoral board proceedings, in connection with elections, Latches does apply. And that's the Tully case and Crouse. There were a couple of others that I've cited. So, you know, from a fundamental point of view, this issue is not properly before the appellate court for even a ruling. In the event that this court does find and give them the benefit of the doubt to say, okay, well, let's look at the issue, well, then we have to get to the second question is, well, was there a final written decision as required by the election code? And I believe taking the guidance from Sinkis that says, well, statutes must be read in peri materia to provide a logical outcome. Here we have two sections. We have the Open Meetings Act and the election code. Although this is not a per se Open Meetings Act case, it was a petition, the Open Meetings Act applies nonetheless. Now, I think it's preposterous for counsel to argue that, oh, on the 28th, this electoral board went into executive session, and then on the 1st, it came out of executive session. I mean, that doesn't happen, first of all. Second of all, the record, I mean, the agendas don't show that. I mean, that's just ridiculous to even consider that. But as counsel points out, electoral boards are not allowed to go into executive session because they aren't listed under Section 2 for the executive session exception. They aren't able to take this under advisement in closed session. So there's a contradiction here. I'm presuming that the electoral board followed the Open Meetings Act and followed the law. I'm presuming that they did not meet in secret at some undisclosed time, date, location between January 28th and February 1st. Okay? Then we have February 1st comes up and says, well, we've got one person who shows up, and we don't have a motion, a second, or a vote to approve the written decision. So there's a question then, okay, well, is this a final decision or not? Now, there's key words in Section 10-10 of the Election Code which says sustained, has sustained. The only way an electoral board, and it must state in writing which objections, if any, it has sustained. So the only way an electoral board can sustain is by voting. So this electoral board would have had to first meet on February 1st with a majority of the quorum present, present a motion, deliberate, have a second, vote on it, and have that vote be a majority of the electoral board. I guess the argument of the appellant is that they had decided that on the 28th, and all they were doing is put it on a piece of paper that they had already signed by the 1st. Well, if that was the case, they would have to have that written opinion. On the 28th, there was a general discussion of some sustained or not as far as the objections. They did not go forward with the requirements of Section 10-10, which states that the decision of a majority electoral board shall be final, oh, sorry, the electoral board must state its findings in writing and must state in writing which objections, if any, it has sustained. Well, he's saying they did that. He's saying they did that on a piece of paper which was approved by them, but not at the meeting on the 1st. Well, there was a piece of paper that did set forth all that information, but it was not sustained by a majority of the board. That's a draft in my analysis. I mean, taking a cynical view, then this board violated the Open Meetings Act by having a meeting some point between January 28th and February 1st, which would have been a closed meeting, which would have been in violation of the Open Meetings Act, and which would authorize this court or a trial court to nullify and void that action taken in a closed executive session. And that's sort of what counsel was arguing, that, oh, well, they did this in executive session. Well, they're not authorized to do that. So by his own argument, this court would be authorized to strike that decision if it was a final decision. All right. Then his next argument is, well, but you can't object because nobody appeared on February 1st from the candidates. Well, under the Open Meetings Act, you don't need to be there to say I object. All you have to do is have a right that's denied or have a violation of that. There are plenty of Open Meetings Act cases that are filed daily or weekly, whatever the rate is now, but that assert some form of violation where there isn't a formal objection or, for that matter, where somebody may even not appear. So that's nowhere found in the law, nowhere found in case law. I mean, I'm presuming that this electoral board would have met with the quorum and voted. I mean, that was my presumption. It's fundamental black-letter law that says, well, this board should meet with the quorum and do what it's supposed to do. So that's certainly a concern of mine that they did take this action in violation of the Open Meetings Act. As to the arguments about going into executive session, there's no motion. There was no vote to go into executive session. So that argument is completely off the wall and unsupportable under any set of facts in any record anywhere. As far as the going forward to the ‑‑ if this order is not ‑‑ if the February 1st decision is not properly entered, the Chabowski case said that as a sanction for a failure that the court can take action. And that's certainly within this court's authority to enact the order that she ordered. Proceeding on to the, you know, if we go even further and say, well, okay, let's look at the manifest weight of the evidence. Well, first of all, that's not properly before the court. But there was no majority of this electoral board. So under the Shover decision, which sort of says that, although it talks about the state board, which has eight members, and they talk about a four‑to‑two decision. So where there's a four‑to‑two decision, which is not a majority, then in that situation, that board is not owed a deference. It's not owed the manifest weight deference. And that's a similar situation here where we don't have a manifest ‑‑ we don't have the board taking a majority vote. I am very, very concerned about what is in the supplemental record here. And the supplemental record was provided by ‑‑ well, there was two supplemental records. I filed one, which showed the timesheets of the electoral board and indicated further Open Meetings Act violations. Putting that aside, if taking this electoral board's supplemental record on its face value, there are photographs that they have submitted as part of this record purportedly that were photographs considered by the local election official photos to rebut Williams. Well, those records were never part of any proceeding on January 28th. And if they were, that would support this court's finding that that decision was against the manifest weight of the evidence. Because I didn't see those exhibits. Kenneth Williams was not able to rebut those. So that's just fundamental due process, fundamental rights to confront the opponent, to see the evidence, to provide, you know, your statements and to cross-examine that evidence. Those photographs of Kenneth Williams purportedly were not in any of the transcripts from January 28th. It should be noted that the transcripts that they did file did not contain the exhibits that are referenced. So if the exhibits aren't there, that's another reason why this court was not able to support or sustain the electoral board's decision, and she found that the electoral board decisions were not properly supported by the record. So in summary, I would ask that this court review the election code in pairing material with the Open Meetings Act, and taking those two together, find that this electoral board did not issue a final decision, in the sense that it was a draft and not go the way of the violation of the Open Meetings Act, but just presuming this was a draft. Therefore, it would not be a final decision of the electoral board, as in a tie decision or where in the state officer's electoral board they don't muster a majority to sustain a complaint, this complaint would fall, the objector's petition would fall, and the candidate's names would be certified to the ballot. But again, you know, we don't even need to get to that because no standing, there was no preservation of the issues on appeal. The alternative latches would prevent this party from now raising something that she had full notice of on or around February 6th, shortly after that when this petition for judicial review was filed. Furthermore, the appellant has not shown that the trial court abused her discretion in entering the order that she entered as a sanction for violations of the Open Meetings Act. Thank you. Thank you, Mr. Finkel. Mr. Agrola, some brief rebuttal. Thank you, panel. You know, on this motion dismissed, we speak about it received notice of the first-sector default, which they defended against, and, in fact, come to think of it, that's more of his appearance in front of Judge Ponce de Leon. We received no notice of the second time and all those little actions there. But counsel spends a lot of time talking about perceived errors in the record as applied by the electoral board to the trial court. It makes one think he lost at the trial court level. He won. Whatever omissions may have been at the trial court level, one, I don't know how they punished my objector. She is equally at risk of losing some sort of position at the trial court if there's an insufficient record. But, two, they won at the trial court. So there's no sanction that is appropriate to an objector because the independent body, the electoral board, somehow failed to. But going a little farther, they did not fail. As far as I can see from this eight-volume record, in an overabundance of caution, they put everything in there. And as to those, counsel in his documents on behalf of Eppley and also in his oral argument just now said that photos were submitted which were not part of the record on the electoral board. Those photos are his photos. Those are those three photos that are those photos of the three pages on this independent desk. There's no other photos that were put in this record. And they are seen in each one of these transcripts that Mr. actually only in 20, EB20, where Mr. Williams claims that he photographed these three documents with clips on them. But he doesn't remember where. He doesn't remember how long ago. He doesn't remember exactly what it was. But that was his support for that. They were bound at one point in time in the past. But they did not sit on their rights. I'm away from them now. We did not sit on our rights. We did not sit on our rights. We waived argument because we can rely on the record because she is required in a limited jurisdiction situation simply to go thumbs up or thumbs down on the board's actions. Not these ancillary matters which may be something for a different injunctive relief. If I could pull back a moment. The board's attorney sent a letter to the circuit court asking for public members. That order became final back before this board met, January. Thirty days passed. They never appealed it. Now I'm hearing about the electoral board's composition. It's improper. They talk about the bias here in their appeal, although not in the argument. And that was improper. But the Open Meetings Act, and Justice Hyman, you cited that one portion that says, the written order shall be issued in an open meeting. They did that on February 1st. And I used executive session, poor use of the term. I'm not familiar all that much with the Open Meetings Act, poor use of the term. All they did was recess and reconvene. They voted on the record. They deliberated on the record. They gave their basis on the record. It was very clear in each one of these cases why they found these witnesses credible, that witness. They chose not to believe them without specifically saying they found them credible. And they sustained the objection. They reduced it to writing. Again, I think everybody would agree they're not supposed to sit there in front of everybody and type it. And they submitted it, and there was no objection in the way they submitted it. I believe they complied with the Open Meetings Act to the extent it has much applicability to this quasi-judicial electoral board. There's no Lanch's argument. The mere fact that we waived argument, that we relied upon a very straightforward record, is not Lanch's. We expected the trial court to affirm. It did not. We were given notice. We were properly in the trial court. We were allowed to appeal an adverse decision. In the adverse decision, counsel indicates, well, you're supposed to look at the trial court. I believe I heard the trial court did not abuse its discretion. Now, he brought up stuff that is in a separate case somewhere. He should have filed if he thought that this composition was wrong or that the Open Meetings Act was violating. He should have come roaring in on an injunction in some other case. Judicial review of an electoral board's decision is limited to the scope of the electoral board's record. Under that, that's all I appealed. That's all I'm supposed to appeal. That's all the trial court's supposed to review. Having appealed to this body, the trial court's decisions, much of Judge Ponce de Leon's decisions were vacated. The trial court's decisions by Judge Kirby are not vacated, and I mean nothing glib by it, but they are set aside because you are supposed to look now at the electoral board because this is simply petition for judicial review brought up on appeal. Nothing more. This Open Meetings Act argument, all these other things, these are ancillary. They are collateral. They are improper in this limited jurisdiction. Thank you. Mr. Grolla? Yes. Mr. Finko, I want to thank you for your arguments and the briefs. This matter will be taken under advisement since it's expedited. I think you're going to have an order, too. Thank you very much. Thank you. Thank you.